Kathryn HASENMEIER–McCARTHY,
Plaintiff,

v.

Warden Dr. Norman ROSE,
et al., Defendants.

No. C2–97–163.

United States District Court,
S.D. Ohio,
Eastern Division.

Jan. 7, 1998.

Kathryn Hasenmeier–McCarthy, pro se.

1. Plaintiff named the following defendants in her Complaint: Valarie Aiden, "Chaplain Barron," Dr. Kathryn Burns, Nurse Vonna Chamberlain, Jo Anne Garber, "Dr. Hammond," Dr. Irving Harper, "Lt. Imes," "Mr. Jarvis" (corrections officer), Assistant Medical Officer Robert ["Bob"] Keys, Deputy Warden Vickie Lucas, "Nurse Mer-

riman," Warden Christine Money, Lt. Kevin Neal, Nurse June Newman, Warden Dr. Norman Rose, Administrative Assistant Maralyn Sines, Lt. Neil Turner, Ohio Governor George Voinovich, Ohio Department of Rehabilitation and Corrections Regional Director Reginald Wilkinson, and Deputy Warden Gwendolyn Winston.

## OPINION AND ORDER

SARGUS, District Judge.

Plaintiff, Kathryn Hasenmeier–McCarthy, an Ohio prisoner proceeding *pro se*, commenced the instant action under 42 U.S.C. § 1983 against the defendants[1] in their official and individual capacities, for alleged violations of the First Amendment right to free exercise of religion and the Eighth Amendment prohibition against cruel and unusual punishment. This matter is before the Court on defendants' motion for summary judgment (Doc. 14) and plaintiff's cross-motion for summary judgment (Doc. 16). For the reasons adduced below, the defendants' motion for summary judgment is granted, and the plaintiff's cross-motion for summary judgment is denied.

## I.

## FACTS AND BACKGROUND

The following undisputed facts were elicited upon discovery or by sworn affidavit. The Ohio Department of Rehabilitation and Corrections ["ODRC"] implements a policy requiring all ODRC inmates to be tested for tuberculosis ["TB"]. ODRC policy requires each inmate to submit annually to a purified protein derivative ["PPD"] test, in order to protect inmates and ODRC staff from infection. The PPD test procedure involves injecting a substance into the subject's skin and monitoring the subject for a positive skin reaction.

The plaintiff is an inmate at the Ohio Reformatory for Women ["ORW"]. Plaintiff submitted to the ODRC PPD testing four times from 1991 to 1995. On April 27, 1996 and April 30, 1996, plaintiff refused to submit to the annual PPD test, claiming the injection

procedure violated her religion's prohibition against admitting artificial substances into her body.[2] Plaintiff refused to submit to the test again on May 2, 1996, and she was subsequently transferred to an ORW security control facility, pending her submission to the PPD test. The security control facility is a "negative airflow" area, apparently used to keep suspected TB carriers in respiratory isolation. Plaintiff remained in the security control facility or at the ORW infirmary until the PPD test was forcibly administered, on May 20, 1996. An ODRC "Use of Force Committee" videotaped and reviewed the forcible administration of the PPD test. The committee found that the amount of force applied by ODRC staff to restrain the plaintiff was appropriate and not excessive.

Seeking injunctive and monetary relief, Plaintiff filed this § 1983 action *pro se* on February 11, 1997, averring that the defendants' treatment of her violated the First Amendment Free Exercise Clause and the Eighth Amendment prohibition against cruel and unusual punishment. Specifically, plaintiff alleges that ODRC and other state personnel violated her free exercise rights when they ordered or participated in the forcible administration of the PPD test, in violation of her religious views. Plaintiff further alleges that the forcible procedure and her placement in the security control isolation area violated her right to be free from cruel and unusual punishment. On March 28, 1997, the defendants filed a motion for summary judgment as to plaintiff's Eighth Amendment claim. Defendants' motion for summary judgment also sought dismissal of a number of defendants because plaintiff's claims against them rest upon a theory of vicarious liability. On May 16, 1997, plaintiff filed a cross-motion for summary judgment as to the Eighth Amendment claim and the Free Exercise claim.

## II.

### STANDARD OF REVIEW

The procedure for granting summary judgment is set forth in Fed.R.Civ.Pro. 56(c), which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

A party seeking summary judgment bears the initial burdens of: (1) specifying the basis upon which it contends judgment should be granted and (2) identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact. See *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). The moving party may discharge its initial burden by pointing out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* Thereafter, the nonmoving party bears the reciprocal burden of demonstrating a genuine issue of fact for trial. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)). In satisfying that burden, the nonmoving party is required to do more than simply show that there is some "metaphysical doubt" as to the material facts; Fed.R.Civ.P. 56(e) requires the nonmoving party to come forward with specific facts showing that there is genuine issue for trial. *Id.* (citing *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir.1993); Fed.R.Civ.P. 56(e)).

When reviewing a summary judgment motion, the Court must make all reasonable inferences in favor of the non-moving party. *EEOC v. Univ. of Detroit*, 904 F.2d 331, 334 (6th Cir.1990) (citations omitted). "At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Terry Barr Sales Agency, Inc. v. All–*

---

**2.** Plaintiff, a practicing Christian, believes that the injection of artificial substances into her body violates certain passages in the New Testament to the Holy Bible.

*Lock Co.,* 96 F.3d 174, 178 (6th Cir .1996) (quoting *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2509) (internal quotations omitted). The Court cannot make credibility determinations or draw inferences from the facts when confronted with a motion for summary judgment. See *id.* (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14).

## III.

## ANALYSIS

### A. Free Exercise of Religion

 Both plaintiff and defendants have filed cross motions for summary judgment as to the propriety of forcibly compelling the plaintiff to submit to a PPD test. Plaintiff asserts that the forcible administration of such tests in violation of her religious faith contravenes her rights under the First Amendment and the Religious Freedom Restoration Act of 1993. ["RFRA"], 42 U.S.C. § 2000bb, *et seq.* In turn, the defendants argue that they had a legitimate penological interest in protecting inmates and staff from infectious diseases.

 In *City of Boerne v. Flores,* —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Supreme Court declared the RFRA to be unconstitutional in that Congress exceeded its authority under § 5 of the Fourteenth Amendment. Consequently, the issues raised by the parties in the cross motion for summary judgment are subject to the standards set forth in *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) and *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Under the standards delineated in these cases, when a prison regulation impinges on an inmate's First Amendment right to freely exercise her religion, the regulation is valid if it is reasonably related to legitimate penological interests.

It is beyond dispute that tuberculosis represents a public health threat to both inmates and prison personnel. As recently noted in the case of *Reynolds v. Wagner,* 128 F.3d 166, 178 (3d Cir.1997), testimony submitted to Congress indicates that infectious diseases develop commonly in prisons and spread quickly because of high population density. The President of the National Commission on Correctional Health Care testified that tuberculosis is 500 percent more common in prisons than in the general population.[3] Further, tuberculosis, in addition to being highly infectious, can require years of treatment and in its most severe form can lead to death. *Rhinehart v. Gomez,* 1995 WL 364339 (N.D.Cal.1995).

Many Courts have made specific findings as to the means and methods of the transmission of TB, which is spread through a bacterium called tubercle bacillus. In *Karolis v. New Jersey Department of Corrections,* 935 F.Supp. 523 (D.N.J.1996), the Court made detailed findings as to the fact that TB is disbursed into the environment by droplet nuclei, which are airborne particulates containing the TB bacterium. Individuals may become infected upon inhaling the droplet nuclei which remains suspended in the air. After inhalation of such particles, TB bacterias settle in the lungs and multiply. Such nuclei may be transmitted when an infected individual sneezes, coughs or speaks. Further, the likelihood of developing TB increases if the individual's immune system is weakened. *Karolis* at 527.

In addition to PPD testing, x-rays are alternative methods of detecting TB. There is, however, a fundamental distinction between active TB and latent TB infections. *Karolis* at 529. An x-ray will identify only those patients with active TB, while the PPD test may reveal those individuals exposed to TB. For those in the latter category, additional monitoring is required together with what is called isoniazid therapy. *Id.* This therapy is only recommended for patients having a positive reaction to the PPD testing, since such therapy has harmful side effects, including the potential for liver dysfunctioning.

A number of courts have recently addressed the forced administration of PPD testing upon nonconsenting inmates. Initial-

---

**3.** Testimony before the House Subcommittee on Appropriations; Hearings on National Institute of Justice study on the Health Needs of Soon–To-Be Released inmates. 1997 WL 10571095.

ly, the Court notes that several of these cases were decided under the standard set forth in the Religious Freedom Restoration Act of 1993, and, in light of *City of Boerne, supra,* are no longer correct statements of the law. *See, Jolly v. Coughlin,* 76 F.3d 468 (2nd Cir.1996), *Jihad v. Wright,* 929 F.Supp. 325 (N.D.Ind.1996); *Jones–Bey v. Wright,* 944 F.Supp. 723 (N.D.Ind.1996).

In an unreported case decided before the enactment of the Religious Freedom and Restoration Act of 1993, the Sixth Circuit upheld the administrative punishment of an inmate who had refused to take a tuberculosis skin test. *Mack v. Campbell,* 948 F.2d 1289, 1991 WL 243569 (6th Cir.1991) (table disposition). The Court noted that, "[t]he tuberculosis screening program is reasonably related to the legitimate penological interest in preventing the spread of disease." *Id.* at 1289.

Other cases, both pre- and post–RFRA, have upheld the forced administration of tuberculosis skin testing by prison authorities. In *Rhinehart v. Gomez,* 1995 WL 364339 (N.D.Cal.1995), the plaintiff was a practicing Muslim who contended that his religious beliefs prohibited him from submitting to mandatory TB testing. Similar to the plaintiff in the case at bar, Rinehart was physically compelled to submit to TB testing. The Court concluded that the State had a legitimate interest in conducting TB testing that outweighed plaintiff's interest. Emphasizing the imminent risk of serious harm to other inmates, the Court found that the State was justified in the involuntary testing of the plaintiff.

A similar result was reached in the case of *Washington v. Cambra,* 1996 WL 507313 (N.D.Cal.1996). Furthermore, in *Karolis, supra,* the Court held that an inmate could be disciplined for refusing to submit to TB testing, notwithstanding the fact that the inmate was a Christian Scientist and opposed, on religious grounds, to invasive medical testing.

Finally, in *McCormick v. Stalder,* 105 F.3d 1059 (5th Cir.1997), the Court held that a prison could constitutionally force an inmate who had tested positive for TB to be medicated as part of the treatment of the condi-

tion. The prisoner in *McCormick* had initially consented to PPD testing. After testing positive, he objected to isoniazid treatment. The Court emphasized that in light of the contagious nature of TB, the prison had a legitimate interest in forcibly treating the prisoner to prevent the spread of an infectious disease for the benefit of both the prisoner himself as well as other prisoners and staff.

In applying the standards set forth in *Turner v. Safley, supra,* and *O'Lone v. Estate of Shabazz, supra,* the Court finds that the defendants have a legitimate penological interest in protecting inmates and staff from infectious diseases and that mandatory PPD testing is a reasonable method of accomplishing such goals. Further, any other alternatives, such as the taking of chest x-rays, are insufficient to detect latent tuberculosis. While the latent form of the virus is generally not contagious, the PPD test is an important method in identifying and isolating potential carriers, who may later develop the contagious, active form of TB. Under these circumstances, the critical need of the defendants to detect, control, and treat a highly contagious disease more than satisfies their burden under *Turner v. Safley* and *O'Lone v. Estate of Shabazz.*

For these reasons, plaintiff's Motion for Summary Judgment with respect to her claims arising under the First Amendment are **DENIED.** Further, with respect to the same claim, the defendants' Motion for Summary Judgment is **GRANTED.**

## B. Cruel and Unusual Punishment

Defendants' motion for summary judgment and plaintiffs cross-motion for summary judgment raise reciprocal arguments concerning cruel and unusual punishment. Plaintiff, alleged in her complaint and in her cross-motion for summary judgment that she was deprived of communication, clean bedding, clean clothing, and hot food when ODRC personnel placed her in security control isolation. Plaintiff argues in her cross-motion for summary judgment that such depravation violated her right to be free from cruel and unusual punishments. Plaintiff

further argues that the force exercised by ODRC staff in administering the PPD test was excessive, and therefore, the PPD procedure also amounted to cruel and unusual punishment. Conversely, defendants argue in their motion for summary judgment that plaintiff has failed to satisfy the requirements of an Eighth Amendment cruel and unusual punishment claim.

 The Eighth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. See *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). The United States Supreme Court has held that the Eighth Amendment applies not only to deprivations relating to the sentence, but also to the treatment a prisoner receives in prison and the conditions under which he or she is confined. See *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (quoting *Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (additional citations omitted)). The Eighth Amendment's prohibition of cruel and unusual punishments restrains prison officials from using excessive force against prisoners. See *id.* (citing *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). The Amendment also requires prison officials to provide humane conditions of confinement, such as adequate food, clothing, shelter, and medical care. See *id.* (citing *Hudson v. Palmer,* 468 U.S. 517, 526–527, 104 S.Ct. 3194, 3200–01, 82 L.Ed.2d 393 (1984)). In the case *sub judice,* the plaintiff attempts to invoke the Eighth Amendment's prohibition of excessive force and the Amendment's prohibition against inhumane conditions of confinement.

 A claim arising under the Eighth Amendment, whether it involves excessive force or conditions of confinement, must satisfy an objective prong and a subjective prong. The objective element requires that the alleged deprivation be "sufficiently serious," and the subjective element requires that the prison official have a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977 (citations omitted). Although the objective-subjective analysis applies to claims involving excessive force

and those involving conditions of confinement, the subjective portion of the test differs considerably with regard to excessive force claims. Plaintiff alleges that the defendants used excessive force *and* deprived her of humane conditions of confinement; therefore, the Court must analyze each branch of plaintiff's Eighth Amendment claim separately.

### 1. Conditions of Confinement

As indicated above, the objective element of an Eighth Amendment claim requires the deprivation to be "sufficiently serious." See *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977. The United States Supreme Court has indicated that not every deprivation infringes upon a constitutionally protected right; rather, a claim involving conditions of confinement satisfies the objective element of the Eighth Amendment analysis only if the challenged conditions result in "unquestioned and serious deprivations of basic human needs." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). According to the Sixth Circuit Court of Appeals, "[o]nly those deprivations denying the 'minimalized measure of life's necessities' may form the basis of an Eighth Amendment violation." *Gibson v. Foltz,* 963 F.2d 851, 853 (6th Cir.1992) (quoting *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (additional citations & internal quotations omitted)).

 In the case *sub judice,* even if plaintiff's unsupported allegations regarding deprivation of communication, clean bedding, clean clothing, and hot food during her respiratory isolation period are true, those allegations do not illustrate a deprivation of the necessities of life or basic human needs. On the contrary, the interdisciplinary progress notes ["IPN's"] submitted by the defendants in support of their motion for summary judgment illustrate that ODRC medical personnel monitored the plaintiff's condition on a daily basis while she was confined in respiratory isolation. Those notes also set forth several entries by ODRC staff reflecting that plaintiff had "no complaints." See, e.g., IPN entries of May 15, 1997, May 16, 1997, and May 17, 1997. Additionally, the record illustrates

that ODRC staff provided plaintiff personal items when she requested them. See, e.g., IPN entry of May 15, 1996 at 10:00 p.m. ("toilet paper and writing tablet").

Defendants argue that the allegedly inhumane conditions plaintiff complains of are not egregious enough to meet the Eighth Amendment's objective requirement. Viewing the evidence most strongly in the plaintiffs favor, the Court agrees with the defendants that the ODRC staff's respiratory isolation procedures did not deprive the plaintiff of "basic human needs." Accordingly, the Court concludes that the defendants have satisfied their initial burden under Fed.R.Civ.P. 56(c) of demonstrating that the plaintiff has no facts to support her conditions of confinement claim.

■ Defendants also argue that even if plaintiff could demonstrate that the conditions of her respiratory isolation were objectively sufficiently serious, plaintiff has also failed to satisfy the subjective prong of the Eighth Amendment analysis. As previously indicated, the subjective portion of the test for inadequate conditions of confinement requires the plaintiff to prove that the prison officials acted with a sufficiently culpable state of mind. See *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977 (citations omitted). Regarding prison conditions cases, the United States Supreme Court has held that the sufficiently culpable state of mind for satisfying the subjective portion of the Eighth Amendment analysis is one of "deliberate indifference." *Id.* (quoting *Wilson*, 501 U.S. at 302–03, 111 S.Ct. at 2326–27) (additional citations omitted). The *Farmer* Court further held that:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference.

*Id.* at 837, 114 S.Ct. at 1979.

In the instant case, the defendants maintain that plaintiff has failed to make a showing that ODRC personnel acted with deliberate indifference or wantonly inflicted pain and suffering upon her by confining her to respiratory isolation, pending her submission to a PPD test. Defendants argue that the ODRC TB testing policy contemplates respiratory isolation for persons who test positive for TB, and that confinement is a necessary precaution for inmates who refuse the latent TB testing procedure. Defendants further argue that the policy-based rationale for confining plaintiff negates any inference of wanton infliction of pain and suffering. The Court finds that ODRC's system of daily monitoring and ODRC's documented policy of isolation for potentially infected inmates demonstrates that the defendants did not willfully and wantonly inflict pain and suffering on the plaintiff. Therefore, the Court holds that plaintiff cannot satisfy the subjective prong of her conditions of confinement claim. Because defendants have demonstrated that the plaintiff has failed to satisfy the objective and subjective portions of her conditions of confinement argument, the Court concludes that the defendants are entitled to the requested summary judgment regarding that branch of plaintiff's Eighth Amendment claim.

### 2. Excessive Force

■ Plaintiff averred in her complaint that the defendants' forcible administration of the TB test constituted the use of excessive force, in violation of her Eighth Amendment right. Defendants argue in their motion for summary judgment that plaintiff cannot satisfy the objective and subjective portions of an excessive force claim under the Eighth Amendment analysis.

■ The deliberate indifference standard utilized in a conditions of confinement claim "is inappropriate ... when officials stand accused of using excessive physical force." *Farmer*, 511 U.S. at 835, 114 S.Ct. at 1978 (quoting *Hudson*, 503 U.S. at 6–7, 112 S.Ct. at 998) (additional quotations & internal quotation marks omitted). Where, as in the instant case, the prisoner alleges prison officials used excessive force, the prisoner "must show more than indifference, deliberate or

otherwise." *Id.* Instead, "the claimant must show that officials applied force maliciously and sadistically for the very purpose of causing harm." *Id.* (quoting *Hudson*, 503 U.S. at 6, 112 S.Ct. at 998 (internal quotation marks omitted)). The *Farmer* Court also noted that an Eighth Amendment claimant can satisfy this heightened subjective requirement by proving that prison officials "used force with a knowing willingness that [harm] occur." *Id.* (alteration in original).

Defendants argue in their motion for summary judgment that ODRC personnel administered appropriate force under the circumstances with a purpose to protect the plaintiff and other inmates from the harmful TB virus. In support of that contention, defendants submitted the use of force committee report, the ODRC TB testing policy statement, and the video tape of the incident.[4] After reviewing the video tape, the Court agrees with the ODRC use of force committee report. It is apparent that ODRC staff did not act with knowing willingness to harm the plaintiff, but rather, sought to restrain the plaintiff in order to enable them to administer medical testing pursuant to a valid prison health and safety program. See ODRC Policy Statement (mandating inmate testing and treatment); Admin. Reg. 5120-9-01 (specifying standards for use of force).

Because the defendants have produced undisputed evidence demonstrating that ODRC personnel did not act maliciously or sadistically in administering plaintiffs PPD testing, the Court concludes that the defendants have satisfied their initial burden under Fed. R.Civ.P. 56(c). Pursuant to Rule 56(e), the plaintiff bears a reciprocal burden of setting forth evidence showing a genuine issue for trial.

Plaintiff asserts in her cross-motion for summary judgment that the alleged severity of her wounds is sufficient to create a genuine issue of fact concerning the subjective portion of the test for cruel and unusual punishment. However, the plaintiff has failed to produce any evidence showing that ODRC staff members applied force maliciously and sadistically for the very purpose of causing harm. In discharging her reciprocal burden, the plaintiff cannot merely stand on the bare allegations of her pleadings; the plaintiff must come forward with some evidence demonstrating a genuine issue of material fact. See *Pierce*, 40 F.3d at 800 (citing *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355–56). Because plaintiff has failed to affirmatively demonstrate a genuine issue of material fact regarding the defendants' alleged use of excessive force, the Court finds, construing the evidence most strongly in the plaintiffs favor, that the plaintiff has failed to discharge her reciprocal burden under Fed. R.Civ.P. 56(e) as to that part of plaintiff's claim. Accordingly, the Court concludes that defendants are entitled to the requested summary judgment as to the excessive force portion of plaintiffs cruel and unusual punishment claim.

## IV.

### CONCLUSION

Based on the foregoing, defendants' motion for summary judgment as to all of plaintiff's claims are **GRANTED** (Doc. 14), and plaintiffs cross-motion for summary judgment is **DENIED** (Doc. 16). Judgment is rendered in favor of defendants.

**IT IS SO ORDERED.**

---

4. The videotape was entered into the record upon a joint motion of the parties.