**Charles Sims AFRICA**

v.

**Commissioner Martin HORN, et al.**

**No. CIV. A. 96–8646.**

United States District Court,
E.D. Pennsylvania.

March 19, 1998.

Charles Sims Africa, Graterford, PA, pro se.

Claudia M. Tesoro, Philadelphia, PA, for Defendants.

### MEMORANDUM

WALDMAN, District Judge.

Presently before the court is defendants' Motion for Summary Judgment in this 42 U.S.C. § 1983 action. Plaintiff, an inmate at SCI Graterford, has alleged that his placement in the Restricted Housing Unit ("RHU") because of his refusal to take a tuberculosis test violated his First Amendment rights and subjected him to cruel and unusual punishment.

In considering a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Arnold–Pontiac–GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 568 (3d Cir. 1986). Only facts that may affect the outcome of a case under applicable law are "material." *Anderson*, 477 U.S. at 248.

All reasonable inferences from the record must be drawn in favor of the non-movant. *Id.* at 256. Although the movant has the initial burden of demonstrating an absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which she bears the burden of proof. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991)(citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party may not rest on his pleadings but must come forward with evidence from which a reasonable jury could return a verdict in his favor. *Anderson*, 477 U.S. at 248; *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989); *Woods v. Bentsen*, 889 F.Supp. 179, 184 (E.D.Pa.1995).

From the evidence of record, as uncontroverted or viewed most favorably to plaintiff, the pertinent facts are as follow.

Plaintiff was transferred, consistent with prison policy, from the general prison population at Graterford to the RHU because he refused to take a PPD test for tuberculosis. Inmates in the RHU are placed either in administrative custody status (AC) or disciplinary custody status (DC). The conditions under which an inmate is held vary depending on whether he has AC or DC status.

Plaintiff was placed in AC status. While plaintiff was in the RHU, he was found guilty of misconduct for threatening a corrections officer and ordered to serve 45 days in DC

status. At all other points in plaintiff's segregation he was in AC status.

After several weeks, plaintiff submitted to a chest X-ray which was negative. Prison officials, however, continued to hold him in the RHU because he still refused to submit to a PPD test.

The Program Review Committee ("PRC"), on which defendants Lorenzo, Callender and Smith served, conducts 30 day reviews for all AC or DC status inmates in the RHU. During a 30 day review, the PRC decides if the inmate should continue to be held in the RHU and what the terms of his confinement will be. An inmate may raise during a review any problems or complaints he has. The PRC will then follow up and respond.

Plaintiff refused to take a PPD test because to do so would violate the tenets of MOVE which plaintiff states is his religion. Plaintiff states that any puncturing of the skin by injection is prohibited by MOVE. This was related to the PRC.

Under current Department of Corrections policy on tuberculosis control, an inmate who refuses to take a PPD test must be placed by prison authorities in administrative custody. If the inmate continues to refuse PPD testing, he must be maintained in AC status for 12 months. If a 12 month chest X-ray is normal and the inmate is asymptomatic, he is released from AC status and will be managed as "PPD +." Consistent with this policy, plaintiff was released into the general population after 12 months in the RHU.

■ To sustain his First Amendment claim, plaintiff must initially demonstrate that MOVE is a religion. *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025, 1030 (3d Cir.1981), *cert. denied*, 456 U.S. 908, 102 S.Ct. 1756, 72 L.Ed.2d 165 (1982). The general indicia of a religion include a comprehensive belief system which addresses fundamental questions regarding life and morality

and which has formal signs or structural characteristics such as ceremonies, observances and organization. *Id.* at 1032–35. It consists of more than isolated teachings or ideas, however sincerely committed one may be to them. *Id.* at 1035.

There is no evidence of record from which one reasonably can conclude that MOVE qualifies as a religion.[1]

■ Even assuming that MOVE is a religion in which a prohibition of piercing the skin with a needle is a central tenet to which plaintiff sincerely adheres, he has not demonstrated that his placement in AC status was unconstitutional. A prison regulation or policy which might otherwise unconstitutionally impinge on an inmate's First Amendment rights will survive a challenge if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (applying *Turner* reasonableness test to religious rights under First Amendment); *Small v. Lehman*, 98 F.3d 762, 765–66 (3d Cir.1996).[2]

■ "Prisons are high risk environments for tuberculosis infection" and "screening and control measures are necessary to prevent outbreaks." *DeGidio v. Pung*, 920 F.2d 525, 527 (8th Cir.1990). Preventing the spread of this highly contagious disease to inmates and staff clearly is a legitimate penological interest. *See McCormick v. Stalder*, 105 F.3d 1059, 1061–62 (5th Cir.1997); *Hasenmeier–McCarthy v. Rose*, 986 F.Supp. 464, 467 (S.D.Ohio1998); *Ballard v. Woodard*, 641 F.Supp. 432, 437 (W.D.N.C.1986). *See also Westbrook v. Wilson*, 896 F.Supp. 504, 505 (D.Md.1995)(prison policy of placing inmates who refuse PPD testing into segregated custody is "perfectly constitutional"

---

1. Plaintiff did submit in connection with a prior motion a copy of a stipulation entered in a 1980 court case that MOVE was a religion based on the teachings of John Africa. Official court records show that none of the parties in this case were parties in the 1980 case and thus the stipulation, in whatever context it may have been made, does not bind defendants in the instant

action. In any event, plaintiff's First Amendment claim is otherwise deficient.

2. Insofar as plaintiff asserted a claim under the Religious Freedom Restoration Act, that statute has been declared unconstitutional. *See City of Boerne v. Flores*, —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

under *Turner v. Safley*), *aff'd*, 64 F.3d 661 (4th Cir.1995).

Skin testing is the preferred method of screening for tuberculosis. *DeGidio*, 920 F.2d at 527. A chest X-ray "will not detect the disease in its latent stages." *Bailey v. Goord*, 174 Misc.2d 632, 666 N.Y.S.2d 383, 385 (N.Y.Sup.Ct.1997). One year is "the most dangerous period" for development of active tuberculosis. *Id.* "The absence of a PPD test or an observation period under restrictive confinement would increase the danger of contagion among other inmates and prison staff." *Id.* (upholding against free exercise of religion challenge prison policy of restrictive confinement for one year of inmates refusing PPD test).

Defendants did not violate the constitution by effectively requiring plaintiff to take a PPD test or remain in segregated housing for twelve months. Indeed, in doing so prison authorities respected plaintiff's wish, whether religiously based or otherwise, not to be tested. Courts have upheld the forcible administration of PPD tests to inmates. *See Ballard*, 641 F.Supp. at 437; *Hasenmeier–McCarthy v. Rose*, 986 F.Supp. 464, 1998 WL 5448, *4.

■ To sustain his Eighth Amendment claim, plaintiff must prove that one or more of the defendants subjected him to a deprivation sufficiently serious to result in a denial of the minimal civilized measure of life's necessities or exposed him to conditions posing a substantial risk of serious harm, and did so with deliberate indifference to his safety or health. *Farmer v. Brennan*, 511 U.S. 825, 833, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). *See also Young v. Quinlan*, 960 F.2d 351, 365 (3d Cir.1992)(segregated detention does not itself violate the Eighth Amendment "as long as the conditions of confinement are not foul, inhuman or totally without penological justification").

■ Plaintiff variously alleged or stated in a brief in support of an earlier motion that while in the RHU he was denied leisure

library privileges, telephone privileges, regular visitation privileges and food, and was allowed out of his cell for only one hour each day. While depriving an inmate of food would violate the Eighth Amendment, plaintiff has presented no evidence to show that such a deprivation occurred.

The twelve 30–day PRC review reports show that plaintiff complained only about the lack of television and telephone privileges. In response, the PRC approved a telephone call for plaintiff in each of the last four months of his placement in AC status.

Plaintiff has not responded to the summary judgment motion. One cannot reasonably find from the record presented that any defendant violated his First or Eighth Amendment rights.[3] Defendants are thus entitled to summary judgment. Accordingly, defendants' motion will be granted. An appropriate order will be entered.

### *ORDER*

AND NOW, this day of March, 1998, upon consideration of defendants' Motion for Summary Judgment and in the absence of any response thereto, consistent with the accompanying memorandum, **IT IS HEREBY ORDERED** that said Motion is **GRANTED** and accordingly **JUDGMENT is ENTERED** in the above case for defendants and against the plaintiff.

---

**3.** It follows that defendants did not deprive plaintiff of a clearly established constitutional right of which reasonable prison officials should have been aware in light of existing law and factual information available to them. *See Anderson v. Creighton*, 483 U.S. 635, 639–41, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).