Phillip TATE Plaintiff–Appellant,

v.

Terry CAMPBELL, et al.
Defendant–Appellee.

No. 02–3358.

United States Court of Appeals,
Sixth Circuit.

Dec. 15, 2003.

■■■■■■■■■■■■

———

■■■■■■■■■■■■

Phillip Tate, Orient, OH, for Plaintiff-Appellant.

Marianne Pressman, Cincinnati, OH, for Defendant-Appellee.

Before BATCHELDER and ROGERS, Circuit Judges; and RUSSELL, District Judge *

RUSSELL, District Judge.

Mr. Phillip Tate complains of his treatment while in custody at the Madison Correctional Institute. He alleges violations of his constitutional rights under the First, Eighth and Fourteenth Amendments and retaliation on the part of certain officers for filing grievances. The court below dismissed claims against Mr. Jimmy Gossard and Mr. Steven Miller and a conspiracy charge against all defendants. It later granted summary judgment to Mr. Terry Campbell and Mr. Julius Willingham, denied Mr. Tate's motion for discovery sanctions, and denied his motion to reconsider its earlier dismissal of Messrs. Gossard and Miller.

Mr. Tate now appeals the district court's grant of summary judgment, its denial of the motion to reconsider, and its denial of sanctions for alleged discovery violations.

## I.

At the time the alleged offenses occurred, Mr. Tate was a prisoner at the Madison Correctional Institution. Around June 12, 2000, he filed a written complaint against Mr. Campbell, a correctional counselor, alleging offensive and abusive conduct by Mr. Campbell against inmates and staff. Mr. Tate submitted the complaint to Mr. Campbell, and in his response, Mr. Campbell allegedly threatened Mr. Tate, stating that he would "burn" him and "assert his influence within the prison Infirmary to exploit [Mr. Tate's] medical handicap ... lift his medical restrictions ..., and have [Mr. Tate's] living area cubicle 'torn to hell.'" Mr. Tate alleges that he saw Mr. Campbell speak with an Officer Love, who immediately thereafter conducted a two-hour search of Mr. Tate's cubicle.

According to Mr. Tate, on June 21, 2000, Mr. Campbell refused to permit him to use the restroom for three hours, even though Mr. Tate was using a medication that acted as a diruetic and other inmates were allowed to use the restroom. Then on July 20, according to Mr. Tate, Mr. Campbell removed him from his limited-duty job assignment and reassigned him to cleaning jobs that required extensive use of his right arm. On August 4, 2000, Dr. Martin Lowery examined Mr. Tate and found that Mr. Tate did not require a medical restriction.

Finally, Mr. Tate alleges that on August 5, Mr. Willingham locked him into a segregation (isolation) cell for almost an hour, and threatened to leave him there until he agreed to talk to Mr. Willingham about a complaint Mr. Tate had filed against him earlier in July.

---

* Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

Mr. Tate filed suit against Messrs. Campbell, Gossard, Miller and Willingham in September, 2000. The defendants moved to dismiss the lawsuit on the grounds that Mr. Tate had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e. The court below adopted a report and recommendation granting these motions with respect to Mr. Tate's claims against Messrs. Gossard, Miller, and Willingham, on the grounds that Mr. Tate had failed to exhaust his administrative remedies. The court also granted summary judgment for the defendants' with respect to Mr. Tate's Eighth and Fourteenth Amendment claims against Mr. Campbell regarding the removal of Mr. Tate's medical restriction and his reassignment to the cleaning duties.

In September, 2001, the district court reversed its earlier decision and reinstated Mr. Willingham as a defendant, but it affirmed its prior ruling dismissing Messrs. Gossard and Miller. The court also concluded that Mr. Tate exhausted his administrative remedies with respect to his claim against Mr. Campbell regarding the removal of the medical restrictions, but not with respect to the claims arising from the work reassignment. At this time, the court granted in part Mr. Tate's motion to compel Mr. Campbell to respond to discovery requests.

Finally, in February, 2002, the district court entered an opinion and order that is the subject of this appeal. First, the court denied Mr. Tate's motions for sanctions for Mr. Campbell's failure to supplement certain discovery requests. Second, the court granted summary judgment to Mr. Campbell and Mr. Willingham. Third, the court denied Mr. Tate's motion to reconsider the dismissal of Mr. Gossard, Mr. Miller, and the conspiracy charge from the lawsuit for failure to exhaust administrative remedies.

Mr. Tate filed a timely appeal from these three decisions. We consider each in turn.

## II.

With regard to Mr. Tate's request for sanctions, this district court found that Mr. Campbell had adequately responded to the discovery requests by presenting a logbook requested to the court under seal, but not to Mr. Tate. The court concluded that production to Mr. Tate was unnecessary given the court's subsequent grant of summary judgment. We agree.

Lower court's decisions to deny a motion for sanctions are reviewed for abuse of discretion, *see In re Downs*, 103 F.3d 472, 480 (6th Cir.1996), and here, after reviewing the Mr. Tate's requests and Mr. Campbell's response, we cannot say that the untimely production of the logbook prejudiced Mr. Tate in any manner, given that the claim to which the logbook relates was ultimately disposed of by summary judgment.

## III.

We review the district court's grant of summary judgment to Mr. Campbell and Mr. Willingham *de novo*. *Brooks v. Am. Broadcasting Cos., Inc.*, 932 F.2d 495, 500 (6th Cir.1991). The evidence is viewed in the light most favorable to the nonmoving party and summary judgment is only appropriate when there is no genuine issue of material fact. *See, e.g., Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999). Summary judgment is not appropriate where "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

This circuit has previously explained prisoner retaliation claims in *Thaddeus–X v. Blatter*, 175 F.3d 378 (6th Cir.1999) and *Herron v. Harrison*, 203 F.3d 410 (6th Cir.2000). According to these cases, there are two types of retaliation claims, "general claims of retaliation and claims that allege that the individual was retaliated against for the exercise of specific constitutional rights." *Herron*, 203 F.3d at 414; *see also Thaddeus–X*, 175 F.3d at 387. General claims for retaliation arise from the Fourteenth Amendment's due process clause. *Thaddeux–X*, 175 F.3d at 387–88.

Prisoners must establish " 'an egregious abuse of governmental power' or behavior that 'shocks the conscience' " in order to successfully establish a claim of general retaliation. *Herron*, 203–F.3d at 414–15 (citing *Thaddeux–X*, 175 F.3d at 387). As the *Herron* court further explained:

> In the great majority of cases, inmates are unable to survive summary judgment under this demanding standard. The rare exceptions have been in cases where, for example, a prison official issued death threats against an inmate with a cocked pistol at his head, or where prison officials trumped up false disciplinary charges against an inmate and then proceeded to physically abuse him and levy harsh disciplinary sanctions against him.

*Herron*, 203 F.3d at 414–15.

On the other hand, in cases where inmates claim retaliation for the exercise of a specific constitutional right, they must establish three elements: "(1) the inmate engaged in protected conduct, (2) an adverse action was taken that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated, at least in part, by the inmate's protected conduct." *Herron*, 203 F.3d at 415.

Mr. Tate's claims fall within this second category. He argues that he suffered retaliation for exercising his First Amendment right of access to the courts and the right to seek redress of grievances. *See, e.g., Herron*, 203 F.3d at 415 ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."). Mr. Tate's grievance filings were protected conduct under the First Amendment; therefore, he has established the first element of his retaliation claim.

To establish the second element of his claim, Mr. Tate must show that the defendants' actions were more than *de minimis*. *See Thaddeus–X*, 175 F.3d at 396. Their actions must be ones that objectively "would chill or silence a person of ordinary firmness from future First Amendment activities." *Id.* at 397–98 (citation and quotation omitted).

Finally, to establish the third element of his First Amendment retaliation claim Mr. Tate must show that these actions were "motivated, at least in part, by [his] protected conduct." *Herron*, 203 F.3d at 415. This element requires courts to look to the "subjective motivation of the defendants," who are given the opportunity to show that they "would have taken the same action in the absence of the protected activity" and are therefore entitled to summary judgment. *Thaddeus–X*, 175 F.3d at 399.

Mr. Tate also alleges that Mr. Campbell and Mr. Willingham's actions violated the Eighth Amendment. It is common ground that

> [t]he Eight Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment.... [T]he Eight Amendment applies ... to the treatment a prisoner receives in prison.... The Eight Amendment's prohibition of cruel and unusual punishments restrains prison officials from us-

ing excessive force against prisoners. The Amendment also requires prison officials to provide humane conditions of confinement, such as adequate food, clothing, shelter, and medical care.

. . .

*Hasenmeier–McCarthy v. Rose*, 986 F.Supp. 464, 469 (S.D.Ohio 1998) (citations omitted). Claims arising from the Eight Amendment "must satisfy an objective prong and a subjective prong. The objective element requires that the alleged deprivation be 'sufficiently serious,' and the subjective element requires that the prison official have a 'sufficiently culpable state of mind.'" *Id.* (citations omitted). Mr. Tate must show that "officials applied force maliciously and sadistically for the very purpose of causing harm." *Id.* at 470–71 (citing *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

Here, Mr. Tate alleges Mr. Campbell and Mr. Willingham violated the First and Eighth Amendments by searching his cubicle, refusing to permit him to use the restroom, revoking his medical restriction, and restricting him to a segregation cell.

■ Mr. Tate cannot establish a case for retaliation regarding the cubicle search for two reasons. First, the single search of a prison cubicle would not deter a person of "ordinary firmness" from pursuing constitutional grievances. *See Thaddeus–X*, 175 F.3d at 396. Second, as the district court noted, even if the cubicle search made out a *prima facie* case for retaliation or deterrence, Mr. Tate cannot show that the search was not a part of the standard monthly searches. In other words, Mr. Tate cannot establish that his cubicle would not have been searched if he had not filed the grievances. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285–86, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Additionally, the single search of a prisoner's cubicle does not rise to the level

of an Eighth Amendment violation. *But see Scher v. Engelke*, 943 F.2d 921, 924 (8th Cir.1991) (finding an Eight Amendment claim when there had been ten searches in nineteen days); *Vaughn v. Trotter*, 516 F.Supp. 886 (M.D.Tenn.1980) (finding a claim when there had been sixteen searches in six months).

■ Mr. Tate cannot establish a *prima facie* case for retaliation relating to Mr. Campbell's refusal to allow him to use the restroom. Even assuming that everything Mr. Tate alleges is true—that Mr. Campbell denied him permission to use the restroom for three hours even while allowing other inmates to do so—it does not rise past the level of a *de minimis* injury that would not deter a person of ordinary firmness from pursuing his claims. Although Mr. Tate alleges that he suffered great discomfort and humiliation as a result of Mr. Campbell's denials, he apparently did not actually relieve himself during that three hour time period. While forcing a person in the custody or under the control of state authority to publicly soil themselves may create a constitutional violation, *see e.g.*, *Glaspy v. Malicoat*, 134 F.Supp.2d 890 (W.D.Mich.2001), those protections do not extend to mere feelings of discomfort associated with "having a full bladder." So, too, those feelings are not commensurate with "cruel and unusual punishments" the Eighth Amendment prohibits.

■ Mr. Tate cannot establish a retaliation claim relating to the removal of his medical restriction because he cannot show that the "removal was motivated, at least in part, by the inmate's protected conduct." *Herron*, 203 F.3d at 415. Dr. Lowery, not Mr. Campbell, authorized the medical restriction's removal, and Mr. Tate presented no evidence that Dr. Lowery did so at Mr. Campbell's behest. Therefore,

the adverse action complained of bears no relation to the complaints filed against Mr. Campbell. Moreover, a medical judgement by a prison doctor that no medical restriction is needed does not rise to the "deliberate indifference to serious medical needs" which creates an Eight Amendment violation. *Cf. Estelle v. Gamble,* 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

■ Finally, Mr. Tate cannot establish that Mr. Willingham's actions constituted retaliation for the exercise of his First Amendment rights or violations of the Eighth Amendment. First, it is doubtful that forty-five minutes of restricted custody would deter a person of ordinary firmness from exercising his constitutional rights. *See Herron,* 203 F.3d at 415. Second, even if such actions would act as a deterrent, Mr. Willingham has demonstrated that he placed Mr. Tate in the cell as a part of the prison-wide headcount, which removes the taint of retaliatory animus from Mr. Willingham's actions. *See Thaddeus–X,* 175 F.3d at 399–400; *see also Mt. Healthy,* 429 U.S. at 285, 97 S.Ct. 568. Finally, placing a prisoner in a segregation cell for such a short amount of time does not constitute cruel and unusual punishment under the Eighth Amendment.

## IV.

We turn now to the question of whether the district court properly denied Mr. Tate's motion to reconsider the dismissal of Mr. Miller and Mr. Gossard and of the conspiracy and job reassignment claims. The district court concluded that dismissal remained proper for those claims because they related to the medical restriction claim, discussed earlier, on which Mr. Tate could not prevail. We agree with the district court for the reasons outlined in that opinion.

The judgement of the district court is AFFIRMED.