**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0833n.06

Case No. 14-1311

**FILED**
Nov 04, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LANCE MCNEAL, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| GARY KOTT et al., | ) | MICHIGAN |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| | ) | |

BEFORE: BOGGS, SUTTON and STRANCH, Circuit Judges.

SUTTON, Circuit Judge. Michigan prisoner Lance McNeal has a medical condition that forces him to use the restroom as often as four times an hour. He claims that prison officials, when conducting daily prison counts, prevented him from relieving himself on several occasions, and he sued the officials under 42 U.S.C. § 1983 as a result. The officials respond that the thirty-three to forty-six minute prison counts are an everyday imperative of a safe prison, and that they offered McNeal incontinence pads after the first incident and he refused them. The district court rejected the officials' summary judgment motion seeking qualified immunity. We reverse.

I.

There is no such thing as an escape-proof prison, as the history of Alcatraz makes clear. By taking attendance each day, the Kinross Correctional Facility tries to minimize the risks of

escape and other forms of inmate misbehavior. During the count, guards fan out across the cell blocks of a given wing of the prison to make sure each inmate is where he is supposed to be. To maximize accuracy and minimize confusion, prisoners must stay in their cells while the count takes place. Because most cells do not come with toilets, inmates are told to use the bathroom beforehand. Prison guards give ten- and five-minute warnings before each count so no one is caught unaware. Even then, if a particular inmate needs to use the bathroom during the count, the guards have discretion to let him. Historically, the count process has taken between thirty-three and forty-six minutes to complete.

That is too long for Lance McNeal. He suffers from an enlarged prostate that prevents him from "empty[ing his] bladder completely," forcing him to urinate as often as four times an hour. R. 126-4 at 9. The prison has not ignored his plight. He does not claim that its medical staff refused to treat his condition. The prison has not denied him treatment for his prostate problem, and it offered him incontinence pads but McNeal refused them. Prison officials also excused McNeal from the count to use the bathroom on many occasions. Even when McNeal left his cell to relieve himself without permission on several occasions, prison guard Gary Kott typically let the issue slide instead of bringing down the disciplinary hammer—for fear of "escalat[ing]" the conflict by "bombard[ing]" McNeal with misconduct tickets. R. 131-4 at 8.

This dispute turns on three incidents when prison guards denied McNeal permission to leave. Only the first of them happened before the prison tried to solve McNeal's problem by offering him incontinence pads. On March 23, 2009, McNeal told Kott that he needed to use the bathroom, that "[i]t [wa]s an emergency," and that he "ha[d] an enlarged prostate that cause[d him] to urinate frequently." R. 119 at 4. Kott refused, stating that he knew nothing about McNeal's medical condition and that "there [wa]s no emergency." *Id.*; R. 126-1 at 6. McNeal

2

dashed to the bathroom anyway, and when he returned Kott laughed and disciplined McNeal by confining him to a new cell—this one with a toilet. The prison made its rejected incontinence-pad offer on March 27, a day after McNeal informed the prison Health Service of his count-related problem.

The second incident occurred on April 2, when Kott again denied McNeal permission to urinate during count. This time, McNeal stayed in his cell but soiled himself before count ended. McNeal again appealed to the Health Service, and this time received a note saying "extended bathroom [privileges] needed with officer authorization." R. 131-13 at 2. The note did not override the prison's policy vesting complete discretion in prison guards, however, as Kott discovered when he called the Health Service to verify its meaning. Hence the third and final refusal, on April 18, as a result of which McNeal had to urinate into a bottle while his cellmates looked on.

McNeal sued Kott and other prison officials for a litany of constitutional and statutory violations. Discovery and four summary judgment motions narrowed the list of defendants to two (Kott and his supervisor, Dave LaLonde) and the list of claims to one (an Eighth Amendment claim under § 1983). The district court rejected Kott and LaLonde's qualified immunity defense and set the case for trial. Defendants filed this interlocutory appeal.

II.

Before turning to the merits, we must take on a procedural skirmish. McNeal argues that the defendants forfeited their right to assert any qualified immunity defense at all. We see things differently. Kott and LaLonde asked for qualified immunity in their first pleading, a summary judgment motion filed before discovery. McNeal responded. The court sided with McNeal and allowed discovery to proceed. When discovery ended, defendants asked for qualified immunity

a second time. Before answering, McNeal sought and received permission to amend his complaint. In response to that filing, defendants asked for qualified immunity a third time, McNeal again opposed their request, and the district court again took McNeal's side. Because Kott and LaLonde "raised the [immunity] issue at a pragmatically sufficient time" and because McNeal "was not prejudiced in [his] ability to respond," defendants have preserved their right to challenge the district court's decision on appeal. *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993).

McNeal persists that the defense was forfeited based on the defendants' actions when the magistrate judge had the case. When the court denied the defendants' request for qualified immunity the first time around, it is true, the court relied on a magistrate judge's report and recommendation. In objecting to that report, it is also true, Kott and LaLonde did not use the words "qualified immunity." *See* R. 33. And a party, it is once more true, forfeits appellate review of the portions of a magistrate judge's report to which it does not object. *See United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). Still, no forfeiture occurred. Kott argued that he "never violated [McNeal's] Eighth Amendment rights" because he was not "deliberate[ly] indifferen[t]" to McNeal's "serious medical need." R. 33 at 4. LaLonde said the same, and added that, because he was merely Kott's supervisor, he could not be held "personally responsible" for any harm his subordinate might have inflicted. *Id.* at 3, 6. Kott and LaLonde thus objected to the magistrate judge's report by arguing that McNeal had not "alleged a deprivation of a constitutional right at all"—the first step in the qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see Leary v. Livingston Cnty.*, 528 F.3d 438, 442 (6th Cir. 2008). One does not forfeit a qualified immunity defense by making arguments that, if accepted, establish the defense.

That is the simplest explanation for concluding that no forfeiture occurred. There are at least two others. McNeal has a forfeiture problem of his own. *Cf. United States v. Turner*, 602 F.3d 778, 783 (6th Cir. 2010). Even if we were willing to credit McNeal's argument that the prison officials' decision to focus on part one of the qualified immunity defense amounted to a forfeiture at this one stage in the case, McNeal never made any such argument to the district court in the course of defending the report and recommendation. Nor did he do so when the district court considered later dispositive motions. That explains why the relevant district court decisions, including the one now on appeal, all address the qualified immunity arguments on the merits. McNeal indeed never raised any such forfeiture argument until *after* the prison officials had filed their appeal. That is too late by any measure. Which leads to another problem with this forfeiture argument. The district court itself never identified a forfeiture until the prison officials filed their appeal. That too is too late. The district court no longer had authority over the merits of the case, and accordingly had no right to alter the basis for its ruling. A district court may (or may not) have authority to issue an order labeling an interlocutory appeal as frivolous after the government defendants file a notice of appeal. *Cf. Yates v. City of Cleveland*, 941 F.2d 444 (6th Cir. 1991). *But see Adams v. Yontz*, Nos. 94-3767/94-3770, 1996 WL 5563, at *3 (6th Cir. Jan. 5, 1996); *Dickerson v. McClellan*, 37 F.3d 251, 252 (6th Cir. 1994). But even if that is the case, that does not give the district court post-appeal authority to alter the basis and reasoning for its underlying judgment.

III.

To pierce the qualified immunity shield, McNeal must show (1) that Kott and LaLonde violated his constitutional rights and (2) that the right was "clearly established" at the time. *See Leary*, 528 F.3d at 441. We may address these two steps in any order we like. *See Pearson*,

5

555 U.S. at 235. Today, we start—and stop—at step two, which requires McNeal to identify "controlling authority" or "a robust consensus of cases of persuasive authority" imposing liability on prison officials who denied bathroom privileges to inmates under similar conditions. *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011).

Controlling precedent from our circuit goes a long way toward resolving the debate. In one case, an inmate claimed that prison officials "deprived [him] of a working toilet." *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). We turned his lawsuit aside, holding that such "temporary inconveniences . . . did not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *Id.* In another case, an inmate claimed that prison officials barred him from using the toilet, "allow[ed] him to sit in his own urine," and refused him "fresh drinking water for two 8-hour periods." *Hartsfield v. Vidor*, 199 F.3d 305, 309–10 (6th Cir. 1999). We turned his lawsuit aside too, noting "that deprivations of fresh water and access to the toilet for a [twenty]-hour period, while harsh, were not cruel and unusual." *Id.*

In the face of these precedents, McNeal cannot show that the prison officials violated clearly established law. McNeal nowhere claims that the prison and its medical staff have failed to treat his condition as best they can. And each incident, while regrettable, did not contradict any baseline established by our decisions.

Consider to start the second (April 2) and third (April 18) incidents—the only times McNeal was unable to reach a bathroom. On March 27, before each of these incidents, the prison gave McNeal an option that would have provided relief for these brief deprivations—incontinence pads. Yet he refused them. *Simpson v. Overton*, 79 F. App'x 117, 119–20 (6th Cir. 2003), arose from similar circumstances. Like McNeal, inmate Arthur Simpson had an enlarged

prostate that forced him to urinate "three to four times an hour." *Id.* at 118. Like McNeal, Simpson was not allowed to leave his cell during count and soiled himself "on several occasions" as a result. *Id.* at 119. And like McNeal, Simpson rejected the medical accommodation the prison offered—in his case, a "urinal bottle"—because he thought it was a "sham." *Id.* at 119–20. We granted defendants qualified immunity because Simpson could prove "no conceivable set of facts that could show that [the prison officials] w[ere] deliberately indifferent to [his] medical needs." *Id.* at 120. In light of *Simpson* and the other cases mentioned above, McNeal cannot identify a "robust consensus" placing this particular constitutional question "beyond debate." The dissent claims that no such offer was made. But in light of the above, we cannot understand why.

The first incident (March 23) leads to a similar conclusion. There, McNeal did not soil himself or urinate in a bottle; he simply exited the count without permission after Kott denied his request to leave. True enough, the incontinence pads were not yet on the table. But on that occasion, just like on the others, the denial of bathroom access lasted only thirty-three to forty-six minutes. At the time of the first incident, unlike the later incidents, Kott had not received information about McNeal's medical condition from the prison Health Service. Even if Kott had known "facts from which [an] inference could be drawn that a substantial risk of serious harm exist[ed]," *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), McNeal has not shown that Kott acted maliciously by punishing him in that instance—especially in light of uncontradicted testimony that Kott frequently turned a blind eye to McNeal's unauthorized restroom visits during count, and in light of the uncontradicted evidence that McNeal was offered incontinence pads after this incident.

Attempting to rebut these conclusions, McNeal invokes *Hope v. Pelzer*, 536 U.S. 730 (2002), which denied qualified immunity to prison officials who prevented inmate Larry Hope from using a bathroom for seven hours. *Id.* at 738. Seven hours, in the first place, is one thing; thirty-three to forty-six minutes is quite another. But the bathroom deprivation in *Pelzer* does not remotely account for the extent of the prison officials' mistreatment in that case: They also chained him to an outdoor hitching post in the oppressive Alabama heat, bound his hands and feet, deprived him of water, and stripped him shirtless, all without any apparent justification. *Id.* at 734–35. That is "the gratuitous infliction of wanton and unnecessary pain." *Id.* at 738. Nothing of the sort happened here.

Nor, contrary to the dissent's view, does *Barker v. Goodrich*, 649 F.3d 428 (6th Cir. 2011), change the outcome. In the first place, McNeal does not rely on the case. In the second place, there is a good reason why. In that case, prison officials kept Barker from using the bathroom for twelve hours. *Id.* at 434. They *also* locked him in his cell for half a day, cuffed his hands behind his back, failed to feed him, and prevented him from drinking water. *Id.* He stayed standing for most of the night because he could not sit or lie down without pain. *Id.* The next morning, he had difficulty writing and using his wrists. *Id.* at 431. In the end, *Pelzer* and *Barker* simply do not draw a "reasonably particularized" baseline for the clearly established law that the prison officials allegedly violated. *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 508–09 (6th Cir. 2012).

McNeal also relies on *Tate v. Campbell*, 85 F. App'x 413 (6th Cir. 2003). But that case is even less relevant than *Pelzer* or for that matter *Barker*. *Tate denied* an Eighth Amendment challenge on the ground that the inmate "did not actually relieve himself" during the three hours he could not access the bathroom. *Id.* at 417. Although we mentioned in passing that "forcing"

an inmate "to publicly soil [him]self may create a constitutional violation," that is not what happened here, and at any rate noncommittal dictum in an unpublished opinion does not outweigh controlling authority on the other side of the scale. *Id.*

We discount McNeal's final salvo—a trio of district-court decisions—for a similar reason. They do not override the published decisions of our court. *See Boles v. Lewis*, No. 1:07-CV-277, 2008 WL 4534043 (W.D. Mich. Sept. 30, 2008); *Winburn v. Hadfield*, No. 2:06-CV-130, 2007 WL 737739 (W.D. Mich. Mar. 7, 2007); *Glaspy v. Malicoat*, 134 F. Supp. 2d 890 (W.D. Mich. 2001).

Because McNeal cannot identify a violation of any "clearly established" right, Kott and LaLonde deserve qualified immunity. That means we may leave untied the last loose end in this case: Whether the district court could retain jurisdiction over, and hold a trial in, McNeal's case while this appeal was pending on the ground that the trial court thought the appeal was frivolous. *See Yates*, 941 F.2d at 448–49. That debate can wait for another panel and another day.

IV.

For these reasons, we reverse.

STRANCH, Circuit Judge, dissenting. Following discovery and extensive motion practice, the district court narrowed this case to one claim against two defendants, correctional officers Gary Kott and David LaLonde. I would affirm the district court's decision to deny qualified immunity to those defendants. Not only are there genuine issues of material fact for trial concerning whether Kott and LaLonde personally violated McNeal's Eighth Amendment rights, but the law was clear at the time of the alleged events that an officer's decision to refuse an inmate access to a toilet can result in an Eighth Amendment violation, either because the officer was deliberately indifferent to the prisoner's serious medical needs, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), or because the officer engaged in the unnecessary and wanton infliction of pain amounting to cruel and unusual punishment, *Hope v. Pelzer*, 536 U.S. 730, 741–42 (2002). Prison officials "had fair warning . . . that their conduct was unconstitutional" because case law established before 2007 that restraining an inmate in his cell without access to a toilet or water "could rise to an Eighth Amendment violation if allowed to persist for an extended period." *Barker v. Goodrich*, 649 F.3d 428, 435 (6th Cir. 2011).

McNeal was diagnosed with benign prostatic hyperplasia (BPH) (enlarged prostate) by prison medical staff in 2005 after he began serving his term of incarceration in 2003. Since then he has experienced symptoms of the disease, including frequent urination, urgency of urination, inability to empty the bladder, and bladder pain. Each morning around 11 a.m., McNeal was confined to his cell in Unit E-3 without access to a toilet while the prison conducted a formal inmate count, a process lasting between thirty and fifty minutes. McNeal used the restroom before count began, but at times was not able to hold his urine for the period of time necessary to complete count. Written prison policy permitted correctional officers to allow inmates out of their cells during count to use restroom facilities.

Despite this policy, Officer Kott refused to exercise his discretion to allow McNeal to use the restroom either during the formal inmate count or the remaining part of the count period during which certain prisoners, porters, are allowed to move freely about the prison. Kott determined, in his own opinion, that McNeal did not have a medical condition that presented a genuine, urgent need to use the restroom. He claimed that McNeal never "appear[ed] anxious or in pain, buckled over, or holding himself."

On March 23, 2009, during a count period lasting 46 minutes, Kott rejected McNeal's requests to use the restroom. Due to intense bladder pain, McNeal went to the restroom without Kott's permission. When he returned to his cell, Kott said to McNeal, "You shouldn't have asked me to go. Now you make it easy for me to write you two major misconducts." Kott issued McNeal three misconduct tickets for being out of place, for disobeying a direct order, and for insolence. McNeal was found guilty of two of the three charges and was confined to his cell for fourteen days as a sanction. It was only during this time of disciplinary confinement that McNeal was provided a urinal in his cell.

Thereafter Kott refused to allow McNeal to use a restroom during count on two other occasions even after McNeal obtained a medical detail from prison health care staff allowing him to use the restroom during count with officer permission. McNeal provided the medical detail to Kott immediately after he received it, but Kott replied, "This still states you need my permission to use the bathroom. This means nothing."

Kott refused to allow McNeal to use a restroom during count even after Assistant Warden Harwood instructed Kott, through his supervisor, LaLonde, "that because of the Medical Detail, prisoner McNeal should probably be afforded an opportunity to use that bathroom within a reasonable amount of time after count had been taken, if he asks." Kott ignored Assistant

Warden Harwood's instruction. Instead of requiring Kott to conform to his superior's direction, LaLonde supported Kott. LaLonde told McNeal that he "fully support[ed] his officers denying anyone the use of the bathroom, [and] maybe you should get a porter job." Taking this and other evidence in a light most favorable to McNeal, as the district court correctly recognized we must, a reasonable factfinder could determine that Kott and LaLonde acted with deliberate indifference to McNeal's serious medical needs or that they engaged in unnecessary and wanton infliction of pain for the very purpose of causing McNeal harm.

The majority insists that the fault lies with McNeal because he "refused" incontinence pads. The record presents a different picture. On March 26, McNeal sent a kite to Health Services requesting a medical detail for extended bathroom access. The next day, Health Services responded: "[T]his is a custody issue. Health care can provide incon[t]inence pads, rekite if you would like to try them." McNeal did not request the incontinence pads, and Dr. Piazza subsequently provided McNeal with a medical detail allowing him to use the bathroom during count with officer permission. After receiving a kite from McNeal, Health Unit Manager Tanya Cunningham wrote to Warden Woods encouraging correctional officers to follow prison policy allowing prisoners to leave their cells to use the restroom once count was completed. A reasonable jury could find on this evidence that McNeal did not "refuse" incontinence pads and that Kott and LaLonde violated McNeal's clearly established Eighth Amendment rights.

Alternatively, I would affirm the district court's determination that Kott and LaLonde waived their right to raise qualified immunity. These defendants failed to file a timely objection to the magistrate judge's denial of qualified immunity early in the case before discovery took place, *see Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981), and they also did not file an immediate interlocutory appeal of that first qualified

immunity denial. *Arn* and *Walters* apply to all litigants, not just inmates, and where these defendants did not see fit to challenge the magistrate judge's denial of qualified immunity or to take an immediate appeal of the district court's ruling at the first opportunity, the waiver should be enforced.

Accordingly, I respectfully dissent.