RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0189p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JEFF SMITH,

               *Plaintiff-Appellant,*

    *v.*

CITY OF UNION, OHIO,

               *Defendant-Appellee.*

No. 24-3498

Appeal from the United States District Court for the Southern District of Ohio at Dayton.
No. 3:22-cv-00096—Michael J. Newman, District Judge.

Argued:  March 20, 2025

Decided and Filed:  July 18, 2025

Before:  CLAY, BUSH, and BLOOMEKATZ, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Matthew D. Stokely, PICKREL, SCHAEFFER & EBELING CO., LPA, Dayton, Ohio, for Appellant.  Benjamin J. Reeb, BRICKER GRAYDON LLP, Dayton, Ohio, for Appellee.  Steven Winkelman, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.  **ON BRIEF:**  Matthew D. Stokely, PICKREL, SCHAEFFER & EBELING CO., LPA, Dayton, Ohio, for Appellant.  Benjamin J. Reeb, Beverly A. Meyer, Arthur P. Schoulties, BRICKER GRAYDON LLP, Dayton, Ohio, for Appellee.  Steven Winkelman, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.

—————————————

**OPINION**

—————————————

BLOOMEKATZ, Circuit Judge.  Officer Jeff Smith was the City of Union's oldest and longest-tenured police officer.  The City fired him after it found that he had violated several police department policies over a two-day span.  An arbitrator later ordered the City to reinstate Officer Smith because, in its view, the City had overreacted by terminating him for minor and excusable mistakes.  But the City delayed his return for two more months, requiring him to take a fitness-for-duty examination and acting slowly once he passed it.  By the time the City allowed him back, it had promoted a younger officer and secured raises for every officer except Officer Smith.

Officer Smith sued the City under the Age Discrimination in Employment Act (ADEA) and its Ohio counterpart.  He alleged the City fired him because of his age, not his performance, and then delayed his return to retaliate against him for filing a charge with the Equal Employment Opportunity Commission (EEOC).  The district court granted summary judgment to the City on both claims, and Officer Smith appealed.  But on this record, a jury could view the facts and agree with Officer Smith.  We reverse.

**BACKGROUND[1]**

I.     **Officer Smith's Employment with the City**

Officer Smith is a member of the City of Union's police department.  The City hired him in 2003, making him its longest-tenured officer.  During the relevant time, he was 51 years old, which also made him the City's oldest officer.

A collective bargaining agreement (CBA) between the City and the police union governed Officer Smith's employment.  The CBA allowed the City to discipline employees only for "just cause."  2018 CBA, R. 64-19, PageID 2091.  In addition, its progressive discipline

—————————————

[1]At this stage, we recite the record in the light most favorable to Officer Smith, the nonmoving party. *C.S. v. McCrumb*, 135 F.4th 1056, 1060 (6th Cir. 2025).

policy required the City to consider "the nature of the violation, the employee's prior history of discipline[,] and the employee's record of performance and conduct" before punishing the employee. *Id.* Before the events that led to this suit, Officer Smith had received formal discipline three times in his seventeen-year tenure. The City had reprimanded him twice (in 2013 and 2017) and suspended him once (in 2014) for five days. Officer Smith had also received multiple "employee performance improvement plans" which the City treated as informal feedback rather than formal discipline. *See generally* Disciplinary Hist., R. 64-6.

Police Chief Michael Blackwell supervised Officer Smith and the rest of the department. Although only the City manager could suspend or terminate officers, Chief Blackwell recommended when to do so.

## II.    May 2020 Incidents

The City says it fired Officer Smith for his performance on May 30 and 31, 2020, so we describe what happened on those days. On May 30, the City dispatched Officer Smith to investigate a suspicious vehicle parked near a church. Officer Greg Redmon, who was junior to Officer Smith, heard the dispatch call and headed to the church to provide backup. As Officer Smith got to the church and approached the car, it sped away, cutting through grass, turning onto a road, and driving dangerously. Without putting his seatbelt on, Officer Smith followed in hot pursuit. Officer Redmon tailed behind. Both forgot to activate their cameras. The high-speed chase ended abruptly when the fleeing vehicle crashed.

The driver exited her car and collapsed. As she did, Officer Redmon reached the scene. Officer Smith called dispatch to request a medic. At first, he didn't provide his precise location. Nor did he search the driver for weapons. And although he checked her vital signs, he didn't render first aid. Neither did Officer Redmon. As Officer Smith waited with the driver for medics to come, he called her "honey" and "sweetheart." Smith Dep., R. 64, PageID 1419–20.

After the medics arrived, Officer Smith inspected the crashed car. Inside, he seized a bag of drugs and a scale. Then he handled other items, including his own cell phone, without changing gloves. Officer Redmon, who also searched the car, didn't replace his gloves properly either. Later in the day, Officer Smith returned to the church to take photos.

Despite photographing a glove on the ground near where the vehicle had been parked, Officer Smith didn't collect it as evidence.

The next day, dispatch sent Officer Smith and another officer (not Officer Redmon) to a house near the same church to investigate a reported burglary. Officer Smith was responsible for "process[ing] the scene for any and all evidence." Arb. Tr. Vol. I, R. 57-19, PageID 751. Yet again, the City says, Officer Smith failed to collect crucial evidence at the scene.

## III.    Disciplinary Proceedings

While reviewing Officer Smith's incident report from these two days, the department's captain, Chris Allen, grew concerned that Officer Smith had violated "numerous polic[ies]." *Id.* at PageID 657–58. Captain Allen raised these concerns with Chief Blackwell, who ordered him to investigate Officer Smith's conduct. After analyzing the incidents and interviewing Officer Smith, Captain Allen determined that Officer Smith had violated eight department policies, including ones on initiating pursuits, wearing a seatbelt, rendering first aid, interacting with civilians, and handling evidence. Captain Allen recommended suspending Officer Smith. The City placed Officer Smith on paid administrative leave while it decided how to proceed.

Chief Blackwell instructed Captain Allen not to investigate Officer Redmon. Captain Allen complied but, based on his investigation of the May 30 incident, still recommended issuing Officer Redmon a reprimand. Yet the City didn't discipline Officer Redmon or even issue him informal feedback. Chief Blackwell later testified this was because Officer Redmon's "violations weren't as severe," and "he didn't have a habit of violating policy and procedure." Blackwell Dep., R. 62, PageID 1355.

The City then held a hearing to give Officer Smith "an opportunity to respond" to the investigative findings and "tell his side of the story." Disciplinary Action Letter, R. 57-14, PageID 525; Arb. Tr. Vol. II, R. 57-20, PageID 920. At the hearing, Chief Blackwell told Officer Smith he had "watched videos of younger officers that didn't make the mistakes that [Officer Smith] made." Blackwell Dep., R. 62, PageID 1358. Chief Blackwell later testified that he had been referring to the "numerous videos" he watched "on a daily basis of officer pursuits across the country," and had meant "lesser experienced," not "younger." *Id.* at PageID 1358–59.

Less than a month later, on Chief Blackwell's recommendation, the City terminated Officer Smith.

## IV.     Arbitration and Follow-up

Officer Smith filed a grievance challenging the City's decision to fire him under the terms of the CBA. The City denied it, so Officer Smith pursued the next step in the CBA's grievance process—arbitration. And while his grievance proceeded through arbitration, Officer Smith filed an EEOC charge.

At arbitration, Officer Smith admitted to violating several departmental policies. But he argued that the circumstances at the church warranted his initial pursuit, and that his conduct didn't justify termination. Officer Smith emphasized that Officer Redmon had violated some of the same policies. For example, Officer Redmon also neglected to turn one of his cameras on, change his gloves properly, and provide first aid. Yet the City didn't even investigate Officer Redmon, let alone discipline him.

On June 8, 2021—ten months after Officer Smith filed his grievance—the arbitrator issued its decision. It ordered the City to reinstate Officer Smith, reduce his punishment to a three-day suspension, and give him backpay.

The arbitrator based its decision on two findings. *First*, in the arbitrator's view, Officer Smith's misconduct was much less severe than the City had claimed. The arbitrator determined that, given the situation at the church, Officer Smith had good reasons to pursue the fleeing driver, and doing so didn't violate department policy. According to the arbitrator, the City's view that Officer Smith had violated policy by pursuing the fleeing car was "so unreasonable, and so outside what could be considered rational, that it colored all that followed." Arb. Decision, R. 67-1, PageID 2441. Accordingly, the arbitrator excused most of his minor errors and found that Officer Smith had acted reasonably during the May 30 incident.

*Second*, and relatedly, the arbitrator found that the City had overreacted and ignored the CBA's progressive discipline policy by firing Officer Smith. When Officer Smith had made similar mistakes in the past, the City had issued him informal feedback, not formal discipline.

Even when Officer Smith had committed more serious misconduct six years earlier by using a police database for a personal matter, the City only suspended him. Given these findings, the arbitrator concluded that although progressive discipline required something greater than just more informal feedback, "discharge [wa]s too severe." *See id.* at PageID 2446–47. And the arbitrator didn't just think the City had made an innocent mistake. It saw the City's rationale for firing Officer Smith as "so unreasonable" that it suggested that "other motivations exist[ed]" for the City's decision. *Id.* at PageID 2441.

About a month after the arbitrator's award, the City ordered Officer Smith to attend a fitness-for-duty examination before returning to work. The City explained that Officer Smith had told Captain Allen during the investigation that he had been "stressed" during the May 2020 incidents, which led to his errors on the job. Additionally, the City explained that it was requiring the examination because Officer Smith hadn't performed any police work since the City placed him on leave a year earlier.

The City scheduled Officer Smith's exam for July 16, 2021. He passed, so the doctor informed the City on July 24 that Officer Smith was fit for duty. But the City didn't schedule Officer Smith to return to work until August 16. According to Officer Smith, the City delayed his return by asking the doctor, who had already cleared him to return, to review footage from the incidents. And Officer Smith says the doctor stood by his assessment even after reviewing the videos. In the time between the arbitrator's decision on June 8 and when the City allowed Officer Smith to return on August 16, the City promoted Officer Redmon to lieutenant and hired another lieutenant externally. Just three days before it allowed Officer Smith to return to work— and three weeks after the doctor had cleared him—the City negotiated a new collective bargaining agreement that provided every police officer a raise, except for Officer Smith.

V.      **Procedural History**

After he returned to work, Officer Smith brought this suit. He claimed the City violated the ADEA and its Ohio analog by firing him based on his age and then retaliating against him for filing an EEOC charge. The district court granted summary judgment to the City on all counts. It found that Officer Smith failed to present evidence that the City fired him based on his age

rather than his performance. It also held that having to take a fitness-for-duty exam was not significant enough to support a retaliation claim, and that the City did not order the exam because Officer Smith filed an EEOC charge.

Officer Smith timely appealed.

**ANALYSIS**

We review the district court's grant of summary judgment de novo. *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). Granting summary judgment to the City is appropriate if, when viewing the record in the light most favorable to Officer Smith, there is still no "genuine dispute as to any material fact," and the City is "entitled to judgment as a matter of law." *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017) (quoting Fed. R. Civ. P. 56(a)).

Officer Smith claims the City violated the ADEA and its Ohio counterpart. *See* 29 U.S.C. § 623(a), (d); Ohio Rev. Code §§ 4112.14(A), 4112.02(I). We analyze discrimination and retaliation claims under both statutes using the same standards. *See Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283, 287 (6th Cir. 2012). Thus, we consider Officer Smith's state and federal claims together but refer only to the ADEA throughout.

**I.      Age Discrimination**

Officer Smith alleges the City fired him because of his age, violating the ADEA. That statute prohibits an employer from terminating an employee who is at least forty years old because of their age. 29 U.S.C. §§ 623(a), 631(a). To prevail on his ADEA claim, Officer Smith must show that the City would not have fired him but for his age. *Blizzard*, 698 F.3d at 283; *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176–78 (2009). He may do so using either direct or circumstantial evidence. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). The district court held that Officer Smith had neither. However, we need not review both of the district court's determinations in this respect because Officer Smith has at least presented enough circumstantial evidence to raise a triable question of whether the City terminated him due to his age.

Circumstantial evidence is "proof that does not on its face establish" that the employer discriminated against the employee, but would allow a jury to infer as much. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). We analyze discrimination claims based on circumstantial evidence using the three-part framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Officer Smith must first establish a prima facie case. In other words, he must produce "enough evidence to allow the [jury] to infer" the City discriminated against him. *Prima Facie Case*, Black's Law Dictionary (12th ed. 2024). If he does, the City must respond with legitimate, nondiscriminatory grounds for its action. Then, Officer Smith must show the City's given reasons are pretext for discrimination. *See Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 581 (6th Cir. 2022).

Here, our analysis focuses on the pretext inquiry. Officer Smith's arguments at the prima facie and pretext stages overlap substantially. And he does not dispute that the City has given a legitimate nondiscriminatory justification for firing him—his "unacceptable mistakes over a two-day period, in addition to his previous disciplinary history." Appellee's Br. at 31. Therefore, we move straight to the question of pretext. *See Sloat v. Hewlett-Packard Enter. Co.*, 18 F.4th 204, 209–10 (6th Cir. 2021).

Our pretext analysis "is a commonsense inquiry" that elides rigid rules. *See Blizzard*, 698 F.3d at 285 (citation omitted). We ask, "did the employer fire the employee for the stated reason or not?" *Id.* (citation omitted). Employees can demonstrate pretext in myriad ways. For example, they may point to the employer's favorable treatment of similarly situated employees, or may demonstrate that the employer's proffered reason is entirely false. *See, e.g.*, *Singleton v. Select Specialty Hosp.-Lexington, Inc.*, 391 F. App'x 395, 400, 404 (6th Cir. 2010). There is no set formula. *See Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). The district court held that Officer Smith failed to present evidence that the City had treated a younger but otherwise similarly situated officer more favorably. Even if that is correct, which we do not address, Officer Smith can show pretext without a comparator. And here, Officer Smith also sought to demonstrate pretext by presenting evidence that the City's "decision was so unreasonable as to cast doubt on its actual motivation." *Bartlett v. Gates*, 421 F. App'x 485, 490 (6th Cir. 2010); *accord Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir.

2009).  On that basis, he has raised a genuine factual question of whether the City punished him based on ageist animus.

Officer Smith presents two pieces of evidence that undermine the sincerity of the City's stated grounds: (1) the arbitrator's decision; and (2) Chief Blackwell's comment about "younger officers."  *First*, the arbitrator's decision is evidence that the City's real reason for firing Officer Smith wasn't his performance on May 30 and 31, and that the City's response to these incidents was unreasonable.  The arbitrator determined that Officer Smith had not violated the City's policy on police pursuits, and that the City's view that he had done so not only was wrong, but also infected the rest of the City's analysis of the incidents.  Accordingly, the arbitrator found that most of Officer Smith's actions—even those violating policy—were excusable given the circumstances.

Moreover, the arbitrator concluded that the City overreacted and failed to follow its own progressive discipline policy by terminating Officer Smith for minor mistakes.  When Officer Smith had violated similar policies in the past, the City had consistently issued him informal feedback rather than formal discipline.  Even when Officer Smith had committed more serious misconduct six years prior, the City had suspended him rather than terminating him.  After considering the City's progressive discipline policy, Officer Smith's disciplinary history, and evidence from May 30 and 31, the arbitrator concluded that the City's choice to terminate Officer Smith for his performance was based on an improper application of its own pursuit policy and was "so unreasonable" that it "indicat[ed] that other motivations exist[ed]."  *See* Arb. Decision, R. 67-1, PageID 2441.  At bottom, the arbitrator's decision is evidence that Officer Smith's conduct in May 2020 could not reasonably have warranted his termination.  Thus, a jury could conclude the City's stated reasons for firing Officer Smith were pretextual.

*Second*, Chief Blackwell's remark about "younger officers" also supports Officer Smith's showing of pretext.  An employer's age-related comments can raise an inference that the employer acted on ageist animus.  *See Hale v. ABF Freight Sys., Inc.*, 503 F. App'x 323, 335 (6th Cir. 2012).  We gauge how much weight to place on such statements by considering the circumstances.  Was the speaker a decisionmaker or in a position of influence?  Did they make the comments during the decision-making process?  Were the comments clear and repeated, or

ambiguous and isolated? *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354–57 (6th Cir. 1998). These considerations generally cut in Officer Smith's favor. The City doesn't dispute that Chief Blackwell was a decisionmaker. Moreover, his remark—that he had seen "younger officers that didn't make the mistakes that [Officer Smith] made"—came during Officer Smith's disciplinary hearing and less than a month before the Chief recommended terminating him. Blackwell Dep., R. 62, PageID 1358. It is true that Officer Smith cites only a single age-related statement by Chief Blackwell. We do not view the comment in isolation, however. We consider it alongside Officer Smith's other evidence of pretext—the arbitrator's finding that the City's termination was unreasonable. *See Wells v. New Cherokee Corp.*, 58 F.3d 233, 237 (6th Cir. 1995). Taking both pieces of evidence together, a reasonable jury could find that the City fired Officer Smith due to his age, not his performance.

The City argues that the arbitrator's findings don't bind us. That's true. *See Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 548 (6th Cir. 2008). Even so, we have held that an arbitrator's decision in an employment dispute can serve as evidence of whether the employer's stated reasons justified its actions. *See, e.g.*, *Jasany v. U.S. Postal Serv.*, 755 F.2d 1244, 1252 (6th Cir. 1985); *Becton v. Detroit Terminal of Consol. Freightways*, 687 F.2d 140, 142 (6th Cir. 1982). For example, in *Jasany*, an employee challenged his termination at arbitration, but the arbitrator ruled for the employer. 755 F.2d at 1247. In the employee's subsequent discrimination suit, we held that the employer could use the arbitrator's decision to show that it discharged the employee for a legitimate nondiscriminatory reason. *Id.* at 1251–52. So too here. The City presented identical bases for firing Officer Smith before the arbitrator and in court. And the arbitrator found that those rationales didn't justify firing Officer Smith. Thus, the arbitrator's decision helps Officer Smith prove pretext.

The district court also overlooked Chief Blackwell's statement in its pretext analysis. After concluding that the Chief's remark about "younger officers" wasn't direct evidence that the City fired Officer Smith because of his age, the district court concluded that "for the [same] reasons," the comment didn't amount to circumstantial evidence either. *See* Order, R. 70, PageID 2487–88, 2491. But a comment by an employer can constitute circumstantial evidence of ageist intent even if it isn't clear enough to amount to direct evidence. *See, e.g.*, *Diebel v. L &*

*H Res., LLC*, 492 F. App'x 523, 530–31 (6th Cir. 2012). Here, regardless whether Chief Blackwell's comment could count as direct evidence, it still supports an inference that the City terminated Officer Smith because of his age rather than his performance on the job.

The City's remaining counterarguments fall flat. It argues that "one single observational remark by Chief Blackwell" does not suffice to show pretext. Appellee's Br. at 28. But our decision is not solely based on that one remark. The City also argues that Officer Smith cannot show pretext because he conceded that he violated several department policies. Even so, Officer Smith can demonstrate pretext by presenting evidence that the City's chosen punishment was unreasonable given the circumstances, which he has done here. *See Bartlett*, 421 F. App'x at 490; *Risch*, 581 F.3d at 391. A jury could find that the City terminated Officer Smith because of his age rather than his performance. Thus, the district court erred in granting the City summary judgment on Officer Smith's age-discrimination claim.

## II.     Retaliation

Officer Smith also claims the City made him take a fitness-for-duty exam and delayed his return to work as punishment for filing an EEOC charge, in violation of the ADEA. *See* 29 U.S.C. § 623(d). The ADEA prohibits an employer from retaliating against an employee for complaining about age discrimination. *Blizzard*, 698 F.3d at 288. Officer Smith presents only circumstantial evidence of retaliation, so we analyze his claim through the *McDonnell Douglas* framework outlined above. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). We conclude that, even though the City's requirement that Officer Smith undergo a fitness-for-duty exam before returning to work may not have been retaliatory, its decision also to delay—just long enough to promote a younger officer and give every other officer a raise—creates a question of retaliatory motive that we must leave to a jury.

### A.     Prima Facie Case

To establish a prima facie case of retaliation, Officer Smith must point to evidence that (1) he engaged in protected activity, (2) the City knew he had done so, (3) the City took a materially adverse employment action against him, and (4) the protected activity and the adverse

action were causally connected.  *See Blizzard*, 698 F.3d at 288.  The parties dispute just the third and fourth prongs—materially adverse action and causation.

### 1.    Materially adverse employment action

Officer Smith must first show that the City's actions were severe enough to support a retaliation claim—in other words, that they were "materially adverse" to him.  A materially adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).[2]  Officer Smith contends that the City cleared that bar by forcing him to undergo a fitness-for-duty exam and delaying his return, thus depriving him of a chance to receive a raise and a promotion.

Officer Smith has shown he suffered a materially adverse employment action.  True, he does not point us to a case in which requiring an officer to pass a fitness-for-duty examination alone satisfied the materially adverse element.  However, when an employer subjects an employee to a fitness-for-duty exam and imposes additional burdens, such as forced leave, we have held that its actions are "materially adverse."  For example, in *Brown v. Lexington-Fayette Urban County Government*, we held that an employer's actions were materially adverse when the employer placed an employee on unpaid leave for several months to undergo psychiatric evaluation.  483 F. App'x 221, 224, 226–27 (6th Cir. 2012); *accord Brown v. Lexington-Fayette Urb. Cnty. Gov't*, 549 F. App'x 366, 370 (6th Cir. 2013).  That was so even though the employer provided the plaintiff backpay when she returned from leave.  *Brown*, 483 F. App'x at 225–26.

---

[2]The EEOC argues that the district court applied the wrong standard in evaluating whether the City's actions here were "materially adverse" to Officer Smith.  In *Burlington Northern*, the Supreme Court asked whether an employer's action "could well" or "well might" dissuade a reasonable worker.  548 U.S. at 57, 68 (citation omitted).  The district court—like many of our own decisions—asked whether the City's actions "*would* dissuade a reasonable worker."  Order, R. 70, PageID 2495 (emphasis added) (cleaned up); *see, e.g.*, *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345, 347 (6th Cir. 2008); *Blizzard*, 698 F.3d at 290.  We have not analyzed whether this difference in language has meant a difference in the application of the standard.  Harmonizing our caselaw is a task for another day.  Neither party has thoroughly argued which is the correct standard, or that it matters here.  And we believe Officer Smith succeeds under both.  That said, in this opinion, we refer to the Supreme Court's standard from *Burlington Northern*.

Here, too, Officer Smith has explained that the City not only required him to submit to a fitness-for-duty exam, but also delayed his return to his great detriment. Recall that after the arbitrator ordered Officer Smith's reinstatement, the City required him to sit for a fitness-for-duty exam. The City scheduled this exam to occur over a month after the arbitrator's decision. Then, after a doctor cleared him for duty, the City delayed Officer Smith's return for over three more weeks. Moreover, after the arbitrator's reinstatement decision, but before the City allowed Officer Smith to return, the City promoted Officer Redmon to lieutenant and hired another lieutenant externally. It also negotiated raises for every officer except Officer Smith *three days* before it allowed him to return. We hold that the City's fitness-for-duty examination and its attendant undue delay, which caused Officer Smith to miss a pay raise, may well have dissuaded a reasonable worker from reporting age discrimination, satisfying the materially adverse prong at this stage.

The district court held otherwise, but it erred in two ways. *First*, the district court grafted caselaw analyzing the Americans with Disabilities Act (ADA) onto this case. Relying on our decision in *Pena v. City of Flushing*, 651 F. App'x 415 (6th Cir. 2016), the district court held that "requiring an employee to undergo a mental or physical examination for legitimate reasons before returning to work does not constitute a materially adverse employment action." Order, R. 70, PageID 2495 (quoting *Pena*, 651 F. App'x at 422). But *Pena* concerned a plaintiff's claim under the ADA, which, unlike the ADEA, expressly "permit[s] employers to request fitness for duty examinations as long as they are 'job-related and consistent with business necessity.'" 651 F. App'x at 420–21 (quoting 42 U.S.C. § 12212(d)(4)(A)). So *Pena* does not apply here. *Second*, the district court held that the City's requiring Officer Smith to take a fitness-for-duty exam didn't qualify as materially adverse because the City had good reasons for doing so. That logic conflates the materially adverse inquiry, which focuses on the perspective of a reasonable employee, with causation and pretext, which concern whether the employer took the challenged actions in order to retaliate. It also ignores that the City not only required the exam, but allegedly delayed Officer Smith's return despite his passing the exam.

The City contends that Officer Smith's delay argument must fail because it is based on inadmissible hearsay. Officer Smith testified that the doctor initially cleared him to return to

work on July 24, 2021, and then reiterated that opinion to the City on August 3. The City argues that Officer Smith cannot testify to the doctor's statements, so we must discard this evidence. But even if Officer Smith's testimony constitutes hearsay, he doesn't need it. There's other evidence that is not challenged by the City, including Chief Blackwell's testimony, showing that the City waited for over a month to schedule Officer Smith for a fitness-for-duty exam and, when he passed, delayed his return for over three more weeks while negotiating a raise for every officer except him. Accordingly, we see no need to resolve the City's hearsay argument. And Officer Smith has met his burden of showing the City subjected him to a materially adverse employment action.

### 2.    Causation

The parties also dispute whether Officer Smith has shown "a causal connection" between the City's actions and his filing an EEOC charge. *Blizzard*, 698 F.3d at 289. A plaintiff can show a causal connection by demonstrating that the challenged actions came "very close in time" after the plaintiff's protected activity. *Mickey*, 516 F.3d at 525. We measure that temporal proximity from the employer's "first opportunity to retaliate" against the plaintiff after learning of their protected activity. *See George v. Youngstown State Univ.*, 966 F.3d 446, 467 (6th Cir. 2020). The City's first chance to retaliate following the EEOC charge came when the arbitrator ordered the City to reinstate Officer Smith. And Officer Smith argues the City began retaliating immediately by delaying his return to work. Indeed, the City waited for a month after the arbitrator's decision before taking any action. Then it ordered Officer Smith to attend a fitness-for-duty exam. After he passed, the City stalled for over three more weeks before allowing Officer Smith back. We have said that two months between an employee's protected activity and the alleged retaliation is close enough to establish a causal connection. *See Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 664 (6th Cir. 2020) (citation omitted); *Cooley v. E. Tenn. Hum. Res. Agency, Inc.*, 720 F. App'x 734, 743 (6th Cir. 2017). Based on the record here, the retaliatory action was proximate enough to create a reasonable inference of causation.

The City argues that Officer Smith forfeited his arguments on causation by failing to raise them in his briefs before the district court and before us. Ordinarily, we treat an argument as

forfeited if a party did not raise it below, or failed to do so in their opening brief on appeal. *See Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019); *Glennborough Homeowners Ass'n v. U.S. Postal Serv.*, 21 F.4th 410, 414 (6th Cir. 2021). Officer Smith's brief below argued causation in a single short paragraph, and his opening appellate brief didn't explicitly address it—for example, under a separate heading. But we don't treat an argument as forfeited if a party, despite not "specifically discuss[ing]" the issue, raises related or supporting arguments in its briefing. *See Glennborough*, 21 F.4th at 415 (citation omitted); *see also McNeal v. Kott*, 590 F. App'x 566, 569 (6th Cir. 2014). And Officer Smith did that here.

Throughout his briefs before the district court and before us, Officer Smith has consistently pressed his view that the City delayed his return as soon as the arbitrator ordered his reinstatement and then delayed further after he passed the fitness-for-duty exam. For example, both here and before the district court, Officer Smith emphasized that after the arbitrator's decision, "[t]he City initially refused to reinstate" him and "unreasonably delayed" his return to work by over two months as it promoted other officers and secured raises for every officer except him. Opp., R. 67, PageID 2364; *accord* Appellant's Br. at 7–9. Officer Smith's burden at the prima facie stage is "easily met." *Mickey*, 516 F.3d at 523 (citation omitted). And our forfeiture doctrine is meant "to avoid surprise and prevent sandbagging of appellees." *Glennborough*, 21 F.4th at 415 (citation omitted). There was little risk of that in this case, either before the district court or here.

### B.      Legitimate Nonretaliatory Reason and Evidence of Pretext

Because Officer Smith has established a prima facie case of retaliation, the City must put forward a legitimate, nonretaliatory reason for its actions. *Mickey*, 516 F.3d at 526. The City presents two reasons for ordering Officer Smith to undergo a fitness-for-duty exam. *First*, Officer Smith had stated during his interview with Captain Allen that stress caused his mistakes in May 2020. The City worried that stress would affect him on the job again. *Second*, Officer Smith had not performed policework in the year since the City placed him on leave. The City thought he might be rusty. Officer Smith does not contest that these reasons are, on their face, legitimate.

Yet the City presents no legitimate reason for waiting to schedule Officer Smith's exam until a month after the arbitrator ordered his reinstatement. Nor does the City present a legitimate reason for delaying Officer Smith's return by over three weeks once he passed the exam. Rather, at oral argument, the City argued simply that "there was no delay." Oral Arg. Rec. at 22:47–22:50. But the City could point to nothing in the record supporting that assertion. And a jury could see the situation differently. For example, a jury could find that the City's waiting to allow Officer Smith back while promoting his colleagues and securing raises for every other officer was not just a delay, but a deliberate one meant to punish Officer Smith for complaining. Because the City fails to justify waiting two months before allowing Officer Smith to return, we hold that his retaliation claim survives summary judgment.

## CONCLUSION

We reverse the district court's grant of summary judgment for the City of Union and remand for proceedings consistent with this opinion.